SMYTH v. THE EXECUTORS OF E. B. WARD.

1. **Contract**: PERFORMANCE: CONCLUSION OF PARTY. The conclusion of a party to a contract that the contract has been performed will not bind him, if the contract shall not have been actually performed in accordance with its terms.

2. ————: CUSTOM: EVIDENCE. Customs are subordinate to contracts and will not control or affect the rights of parties whose contracts contain conditions not in harmony therewith.

3. **Evidence**: OPINION OF WITNESS. The opinions of a witness, respecting the rights of the parties to the contract in controversy and the legal effect of their acts, are not competent evidence.

4. **Contract**: EVIDENCE. S. had established a mechanic's lien for certain ties furnished a railroad company, and afterwards brought suit against the lessee of the road for certain other ties which he claimed were not included in the former judgment. Upon the issue of the ownership of the ties by the company, it was held competent to show by the engineer that S. delivered others than those embraced in his estimate.

5. ————: ————. It was competent for the plaintiff to inquire into the disposition of the various lots of ties furnished the company, to establish the fact that the number for which judgment had been recovered, and which were included in the engineer's estimates, did not embrace the ties in controversy.

6. ————: PERFORMANCE. The company being bound by the contract to receive all ties of plaintiff required for the construction of a certain specified portion of its road, which should be accepted by its engineer, where certain ties included in the engineer's estimates were not used and certain ones not included were used in their stead, and by agreement of the parties those not used were excepted from settlement, they still remained the property of the plaintiff.

*Appeal from Des Moines District Court.*

SATURDAY, JUNE 16.

ACTION at law. The cause of action is set out in plaintiff's petition in the following words:

"That on or about the 9th day of January, A. D. 1874, plaintiff was the owner of the following personal property, to-wit: About 8,000 railroad ties, lying at or near Farmington, Iowa.

"That said Ward was then the lessee of the Burlington & Southwestern Railway.

"That afterwards, to-wit: in the winter or spring of 1874, defendant, well knowing that said ties were the property of plaintiff, did take said ties and use the same for repairs or construction of said railway, and converted the same to his own use. That said ties were reasonably worth 45 cents each, to-wit, the sum of $3,600."

The defendants' answer to the petition is as follows:

"1. The defendants deny that plaintiff was the owner of said ties, and that said Ward did take said property and convert the same to his own use; deny that said ties were worth 45 cents; and that defendants were indebted in the sum of $3,600.

"2. The defendants aver that in 1872, 1873 and 1874, plaintiff was a sub-contractor, delivering ties on and along said railroad to his superior contractor, who was delivering them to the railway company for construction of said railroad; that the ties in controversy were delivered by plaintiff under his contract for the acceptance and use by said railway company; that said ties were so delivered by said plaintiff, and were accepted by the railway company, and by it used by their agents and officers, with the knowledge and consent of said plaintiff; and that the alleged taking of said ties by said Ward was in his capacity as officer and agent of the railway company, as plaintiff then and there well knew.

"3. That afterwards, and after said ties had been delivered by plaintiff along the line of the road under his contract, said ties were inspected and accepted; that in September, 1873, said Ward became lessee and also president of the railroad company; at which date a large amount of the ties in controversy had been used in the construction of the road; that when said Ward entered upon his duties as president and took posession as lessee, he found the ties—as many as were left unused—as part of the material belonging to the railroad company, and the same were taken and used as such with the full knowledge of plaintiff, in construction of said road.

"That afterwards plaintiff brought suit in the Circuit Court

of Appanoose county against the Burlington & Southwestern Railway Company to establish a mechanic's lien under his contract, and such proceedings were had that he obtained judgment for $27,171.35 upon the engineer's estimates, including the ties in controversy, and a mechanic's lien therefor.

"Afterwards in a cause in the District Court of Appanoose county, brought by E. B. Ward against the Burlington & Southwestern Railway Company, Smyth, *et al.*, plaintiff filed his cross-bill to enforce his mechanic's lien and to have the same declared prior and paramount to the claim of the said Ward for advances made by him prior and subsequent to his lease; and such proceedings were had in said cause that said plaintiff's lien was declared prior and paramount. That said Smyth by his contracts, the delivery of said ties, taking and receiving part payment therefor upon estimates of said ties in controversy, and by his acts and conduct induced said Ward to suppose and believe that said ties belonged to the railway company and was estopped from claiming to own them."

The cause was submitted to a jury and a verdict and judgment were had for plaintiff. Defendants appeal. Other facts of the case necessary to an understanding of the points ruled by the court appear in the opinion.

*Hall & Baldwin*, for appellants.

*P. Henry Smyth*, for appellee.

BECK, J.—The defendants assign forty errors and urge almost all of them upon our attention in argument. The case may be disposed of most conveniently and satisfactorily by determining legal principles applicable thereto and applying them to the objections raised by defendants in groups and classes, so far as they may be treated in that way. In pursuing this course it becomes necessary to determine the precise issues presented by the pleadings and to state briefly the evidence so far as it is necessary to determine the correctness of the District Court's rulings.

I.   The facts that plaintiff delivered the ties for which the suit was brought, and that they were used in the construction

or repairs of the Burlington & Southwestern Railway, are not put in issue. But defendants relied upon the defense that the ties were delivered to the railroad company before Ward became connected with it, and those which had not been used, he found in the possession and ownership of the company as material for future use. The issues in the case involved the questions of the delivery of the ties to the railroad company and their ownership thereof before Ward became the lessee of the property. The fact that Ward used the ties is not denied. The jury under the issues were to determine whether, when he did use them, they belonged to the railroad company or to plaintiff.

The evidence discloses the following facts, which are not controverted.

1. Plaintiff was a sub-contractor under Barnes, who had a contract for constructing the railroad between certain points. The contract between these parties is set out in the abstract as follows:

"Contract dated May 16th, 1872. Smyth agrees to procure all the cross-ties required by the Burlington & Southwestern Railway Company in the construction of their road between Moulton and Unionville; subject to inspection and acceptance of the chief engineer of said railway company.

"The said Barnes agrees to pay for all such ties so delivered and accepted by said engineer, a certain price, depending on the price paid to Barnes by the M. & M. construction company for the same.

"All ties estimated by said chief engineer in each month shall be paid for on or before the 20th day of the month following."

2. The contract of Barnes for the construction of the railroad is set out in the abstract in the following language:

"Barnes agrees to furnish all the material for and to construct the railroad of the Burlington & Southwestern Railway Company between Moulton and Unionville, and to complete the same, according to specifications.

(Then follows list of prices for material, etc., which the company agrees to pay.)

"For track ties.............................45 cents.

"The amount of material delivered and work done, as estimated by the chief engineer, in each month, will be paid on or before the 10th of next month—retaining ten per centum as a security for performance of the contract by Barnes.

"Company is to furnish transportation for material to end of the road.

"The company will always have the right to see that Barnes pays all lawful claims for material and labor entering into the work; and may adjust the same and deduct the amount from money due or to become due Barnes."

After general specifications of various classes of work, there is:

"*Track Ties* will be hewn from sound white oak timber, etc. They will be delivered and piled in good order on ground selected by the engineer convenient for counting and loading on the cars.

"Ties will be finally inspected and accepted or rejected when being distributed on the road-bed in advance of the track. If the contractor accepts the ties from the sub-contractor, it must be at his risk."

3. Under the lease of the road to Ward, he acquired the right to use in construction and repairs all of the material on hand owned by the company. He undertook to advance a large sum ($750,000) to pay for material to be used in the further construction of the road and to pay indebtedness incurred by the company for construction of the part already completed.

4. The ties, to recover the value whereof this suit is prosecuted, were furnished plaintiff by Banks, who delivered them at a point upon the railroad, where they were piled up ready for transportation upon the cars. The engineers of the railroad company counted, inspected and marked them. This was before the execution of the lease to Ward. Plaintiff brought an action against the railroad company to enforce his lien as a material man for ties furnished by him under his contract with Barnes and recovered judgment for $26,235. Before judgment was rendered an agreement was entered into between plaintiff and the railroad company under which Smyth withdrew a

claim for over 6,000 ties which was to be subsequently settled or adjudicated.

II.   Smyth was a witness in his own behalf, and testified to the delivery of the ties by Banks, and that they were piled up, inspected and marked as above stated.   He also testified that the ties in suit were not covered by the judgment in his favor against the company, and that he had not been paid for them, and stated certain facts connected with their delivery by Banks, and the inspection by the engineers of the railroad company.

In the course of the cross-examination, defendants asked him the following question: "Don't you know that when 1. CONTRACT: property is in the possession of a party, under his performance: conclusion of contract, and he has a right to take and use it, party. that it is his property?" Objection to this question by plaintiff's counsel was sustained by the court.   This ruling is assigned as error, and is first called to our attention by counsel in their argument.   The question calls for the expression of an opinion by defendant in his capacity of witness upon a legal proposition.   Upon this ground, it appears, defendant was not permitted to answer it.   But counsel insist that the evidence sought to be elicited was competent for this reason:   Defendants sought to show that the ties were the property of the railroad company before Ward became connected with the railroad; that they were delivered to and received by the company under the contract with Barnes.   They claim that an answer to the question would have shown plaintiff's intention to deliver the ties, and that his acts, with such an intention, would have constituted a delivery in fact.   But something more than plaintiff's act and intention was necessary to constitute a delivery which would have transferred the property in the ties to the railroad company, that is, delivery by the plaintiff and acceptance by the company in accord with the terms of the contract.   Plaintiff's opinion of the legal effect of the delivery at the time would have had no effect upon the rights or obligations of the railroad company.   Therefore, while plaintiff may have intended to pass the property in the ties to the company, and may have supposed that

the property did pass, he would not be bound thereby if his conclusions as to the facts and the law were erroneous.

III.  In the course of the cross-examination of plaintiff, defendants offered in evidence the agreement executed between plaintiff and the railroad, under which the ties in question were withdrawn from the suit brought by plaintiff to enforce his lien.  The abstract fails to show that the introduction of · this evidence would have been proper upon the cross-examination.  We must, therefore, presume that the court below correctly ruled in excluding the evidence.  It may be further remarked, that at a subsequent stage of the trial the agreement was introduced in evidence.  Defendants thus had the benefit of the evidence, and it was not made to appear that they could have elicited any facts in regard to it upon the cross-examination of plaintiff, which were not subsequently brought out.

IV.  The defendants offered to prove "that there was a general usage and custom attending the construction of rail-roads, whereby the inspection and marking of ties, as detailed by the witnesses in the case, constitutes an acceptance thereof by the company, and was all that was required to complete the delivery to and acceptance by the company," and that " by the custom relative to the construction of railroads,      *      *      *      *      the preliminary inspection and acceptance of ties constitutes an acceptance by the company, and puts them in possession thereof, notwithstanding the company reserved the right of finally accepting or rejecting any imperfect ties discovered when placing the ties on the road-bed in advance of the track."·  It was not proposed to show that the contract was entered into with reference to the customs.

2. ——:
custom: evidence.

It is a well settled rule that customs are subordinate to contracts, and will not control or affect the rights of parties whose contracts contain conditions not in harmony therewith.  Under the contract between Barnes and Smyth, the former was liable for all ties accepted by the engineer of the railroad company.  Barnes' contract with the company provides that " ties will be finally inspected, and accepted or rejected, *when*

*being distributed on the road-bed* in advance of the track."
In our opinion, the customs proposed to be established were
in conflict with these provisions, and were not competent to give
a different effect to the contract. The evidence was, there-
fore, rightly excluded.

V. An engineer of the railroad company testified for de-
fendants that he made a count and estimate of certain ties

3. EVIDENCE: furnished by plaintiff, which, however, did not
opinion of
witness.       include the ties in controversy. In the course
of his examination, subsequently, it is claimed by defendants,
certain errors were committed by the court in excluding por-
tions of his evidence. These rulings may be disposed of to-
gether, though they must be separately stated, which will be
most clearly done by using the language of the record. It is
as follows:

"1. Interrogatory: Who had the custody and control of
the ties? * * * * Defendants proposed to prove by this
and other witnesses that the railroad ties in question were
inspected and accepted by the railway company, and treated
and considered as the property of the railway company from
the date of their acceptance." To this evidence there was
objection, and the court ruled as follows: "To the question
as asked, the objection is sustained. You may show that they
were inspected and marked—what was done."

"2. Interrogatory: From the time of the inspection and
marking, whose property were the ties? * * * * Defend-
ants propose to prove that the ties were considered and treated
as the property of the railroad company from and after their
inspection and acceptance, as just stated by the witness."
Upon an objection being made to the evidence, the court said:
"Ask if he knows how the railroad company treated them?"
"Question: Do you know what was done with the railroad
ties, and how the company treated them in respect to the
ownership of them, after they were inspected and branded in
the manner you have spoken of—any ties on the line of the
road? Objected to as incompetent, irrelevant and imma-
terial, and because the question should be confined to the ties
in controversy. Objection sustained to the latter and over-

ruled as to the former. Both parties except. Answer: If they were spotted by a company man, they were taken and used when they were wanted for company purposes."

" 3. Interrogatory: Do you know who had possession and control of those ties? Question objected to as incompetent, etc. *Court:* Let him state the facts in regard to it."

" 4. Interrogatory: You say you directed your subordinates to use a certain portion of the ties. Now, what indications or facts were in your knowledge that made it right to use those ties for that purpose? Question objected to as incompetent, etc. Sustained. Defendants except."

The several rulings of the court shown by the foregoing extracts from the record are complained of as erroneous. Their correctness needs no farther vindication than their history and purport as disclosed above. It is apparent that no other restraint was put upon defendants than to forbid the introduction in evidence of the views and opinions of this witness as to the rights of the parties and the legal effect of their acts, which, it is needless to say, was not competent testimony.

VI. The engineer of the railroad company, in his evidence on behalf of defendants, introduced certain estimates of ties **4. CONTRACT:** furnished by plaintiff. The ties delivered by **evidence.** Banks to plaintiff were included in these estimates. Upon the cross-examination the witness was permitted to testify, against defendants' objection, that plaintiff delivered more ties than are set out in the estimates. The admission of this evidence is urged as error.

The estimates do not show that the ties included therein were used by the company. As to the ties in question, this cannot be claimed, for long after the estimate was made they were unused, being piled up along the railroad. This fact is not disputed. Now, if the Banks ties were included in the estimates and were not used, and other ties which were not included therein were used, it cannot be claimed that the estimate alone, under these circumstances, would vest the title of the ties in the railroad company. It was proper, therefore, to show that, while the estimates included the Banks ties, they did not cover others. Defendants' position, that under this

evidence plaintiff seeks to recover for other ties than those for which suit is brought, is not correct. The evidence, in connection with other facts, tended to show that the railroad company never acquired property in the ties, and not to establish defendants' liability for ties other than those in question.

VII. The witness last referred to and the plaintiff were permitted to testify, against defendants' objection, in regard to another lot of ties included in the estimates. The engineer stated that a part of these ties was condemned, and a part of them was not used until after the road went into the hands of Ward, according to our understanding of the evidence. Plaintiff testified that he was not notified of the rejection of the ties which the engineer testified were condemned, that they were put in the track, and he supposed they were estimated by the engineers. As we understand the case it becomes important to determine the number of ties used and paid for by the railroad company, or covered by the judgment before referred to in plaintiff's favor. If to make that number it was necessary to include the Banks ties, this would tend to prove that the railroad company acquired title in them. If plaintiff furnished such number, excluding these particular ties, which were not used until Ward assumed control of the road, the fact would tend to support plaintiff's claim. It was proper, therefore, to inquire into the disposition of the ties included in the various lots purchased by plaintiff to fill his contract. Indeed we understand that the estimates introduced in evidence by defendants were intended to show that the ties in question became the property of the railroad company. Surely plaintiff had the right to contradict such tendency of the proof by showing every thing connected with the transaction that would lead to a different conclusion.

VIII. An agent of Ward testified that he was informed by the engineer and another officer of the railroad company, and also by Barnes, that the company owned the ties in question. The evidence was clearly hearsay and rightly rejected.

IX. The defendants requested the court to require the jury to answer certain questions as special findings of facts. Two of these required the jury to find whether plaintiff delivered

the ties with the intention they should pass into the control of the railroad company, and be used in the construction of the road, and whether he did all that was required of him towards delivering the ties to the company. The court properly refused to submit these questions to the jury. Smyth's intention and acts, in the absence of acceptance by the company, would not have vested the title of the property in it. The answers to these questions would have afforded no aid in determining the issues of the case.

Three of the questions were substantially the same, as a like number submitted by the court. There was no error in refusing to propound them upon motion of defendants. One question, which required the jury to find whether the railroad company accepted the ties, could have well been given. But the jury evidently found that there was no acceptance of the ties by the company. One of the special findings in response to a question submitted by the court is that the ties when taken by Ward were the property of Smyth. If the jury had found that the company accepted the ties, their answer to this question would have been different. They must have found there was no acceptance of the ties by the railroad company. No other questions were submitted by defendants.

X. By recurring to the contract between plaintiff and Barnes, it will be observed that plaintiff undertook to furnish all the ties necessary for the construction of the road between Moulton and Unionville, "subject to inspection and acceptance of the chief engineer of the railroad company." The contract then covered in *quantity* ties necessary for the construction of the road between the points named; their *quality* was to be determined by the engineer of the road. The acceptance of the engineer constituted an acceptance of the ties under the contract. The main point of contest in this case involves the question whether the ties were so delivered by plaintiff, and accepted by the railroad company, as to become its property. It is not claimed by defendants that Barnes, at the time the ties are alleged to have been taken by Ward, owned them. It is conceded that Barnes had no claim upon them. The matter of dispute

6. ——: per: formance.

involves the ownership as between the railroad company and plaintiff. As the company contracted for the ties with Barnes, his contract with the company must determine the question of ownership, when considered with reference to the contract between him and plaintiff. The contract between Barnes and the company provides that the ties shall "be delivered, and piled in good order on ground selected by the engineer, convenient for counting and loading on the cars. Ties will be finally inspected and accepted or rejected when being distributed on the road-bed in advance of the track. If the contractor accepts the ties from the sub-contractor it must be at his risk." It is very plain that ties furnished by plaintiff which were not delivered to, and accepted by the railroad company, remained the property of plaintiff. It is equally plain that such acceptance is to be determined by the contract between Barnes and the company.

The evidence tended to prove that the ties in question were piled up by Banks for plaintiff along the railroad, and that the engineers of the company examined them and marked them in a manner to indicate that they were of the quality required by the contract. They remained at the place until they were used by Ward after the road passed into his hands. They were included in the estimate of ties furnished by plaintiff and other ties furnished by him and used by the company in constructing the railroad were not included. It required about 80,000 ties to construct the road between Moulton and Unionville. Plaintiff furnished about 101,000, which were covered by the estimates. The ties in suit were not included in the judgment recovered by plaintiff against the company, being withdrawn therefrom by agreement of the parties. Plaintiff assented to this arrangement for the reason that he was informed by the engineer that the ties were not included in the estimate.

The company became liable for all ties received by it in excess of the number required to complete the road as specified in the contract. The assent of the parties to the application of the contract to such ties will be presumed; but the

contract can be extended only to ties received and accepted by the company under its terms and conditions.

If the ties in question, though piled up as directed in the contract, were not finally inspected and accepted by the railroad company they did not become its property. If they were included in the estimates of the engineer and other ties which were accepted and used were not included, and by the agreement of the parties the ties in suit were excepted from the final settlement, it cannot be claimed that such estimate would have the effect to transfer the property to the railroad company. The whole case turns upon the acceptance of the ties under the contract. If they were accepted they became the property of the railroad company, if not they remained the property of plaintiff. We have indicated above circumstances under which acceptance would or would not be found or presumed. A few additional thoughts on this subject are required.

If the ties were inspected and approved by the engineers and estimates made therefor, and a subsequent arrangement made between the parties under which they were excluded from the settlement and not included in the judgment, but other ties were made to take their place, they became, under such arrangement, the property of plaintiff. This results from the fact that plaintiff furnished ties in excess of the quantity contemplated by the contract. Such excess, as we have seen, would be brought within the contract by the assent of the parties, either express or presumed. The arrangement we have just mentioned shows that the ties in dispute were excluded from the operation of the contract.

XI. The instructions given the jury, which are brought in question, are based upon rules of law above recognized or are in harmony therewith. If any well founded objection can be urged against them it is their extreme prolixity. They cover more than eleven printed pages of compact type and are numbered by scores. But defendants ought not to be heard to complain of this fault. Eight pages of instructions, including the modifications thereof adopted by the court, were asked in defendants' behalf. While it may well be doubted that the jury were aided by all of the instructions or even

understood all of them, we discover no evidence in the record leading to the conclusion that they were misled by the great prolixity of the rules given for their guidance. It would be impossible, within the bounds of an opinion of reasonable length, to discuss the instructions and reply to the objections urged against them by defendants' counsel. We are satisfied that no errors are found therein which wrought prejudice to defendants.

XII. It is insisted that the court erred in submitting to the jury the questions which they were required to answer by special findings. They involved matters of inquiry pertinent to the rights of the parties, as settled under the doctrines we have above announced. We think they were properly submitted to the jury—certainly no prejudice was wrought thereby. No further points demand our attention.

AFFIRMED.