FARMERS AND MERCHANTS BANK, Appellee, v. WOOD BROTHERS AND COMPANY, Appellants.

Conversion: PARTIES. A shipper of cattle indebted to both plaintiff and defendant and about to make a shipment to a partnership, whose members were interested in defendant company, agreed with plaintiff that the proceeds of the shipment, in consideration of existing indebtedness and further advances, should be paid to it and applied on such indebtedness. A draft was drawn on the consignees in favor of the plaintiff, but payment was refused because defendants agent requested that the money be held and ap-

plied on notes of the shipper held by it, which were forwarded to the consignees and the proceeds of the shipment applied thereon. The consignees then notified the shipper that the proceeds had been so applied. *Held,* that, plaintiff's action for conversion was properly brought against the defendant corporation rather than the consignee.

**Evidence:** CUSTOM: VARIANCE OF CONTRACT: ADMISSIBILITY: PLEADING. While it is permissible to show a custom in explanation of the terms of a contract of doubtful signification, or to show a trade usage by which words or expressions are given a technical or arbitrary meaning, such evidence is not admissible to defeat a contract or vary its terms: As where the plaintiff in this action based its claim to the proceeds of a shipment of cattle on an express assignment of the same, in consideration of an extension of time on the shippers existing indebtedness and further advances, evidence of a custom among shippers of stock to draw drafts on the consignees which are not intended to pass title to the stock or proceeds is irrelevant, and to affect the interpretation of a contract by evidence of a custom or usage the custom or usage must be pleaded.

**Sales:** ASSIGNMENT OF PROCEEDS: CONSIDERATION. Extension of the time of payment of existing indebtedness and further advances is a sufficient consideration for the assignment of the proceeds of cattle about to be shipped and sold on the market.

**Election of remedies:** CONVERSION: ESTOPPEL. The fact that plaintiff filed and proved his claim against defendant in insolvency proceedings, was not such an election of remedies as will estop the creditor from maintaining suit against a third party for the conversion of the funds of defendant, to which plaintiff is entitled by reason of assignment as security for the debt.

**Same:** ASSIGNMENT OF FUNDS AS SECURITY: APPLICATION. Under an assignment to plaintiff of the proceeds of a shipment of stock to secure existing indebtedness and additional advances also, plaintiff was entitled to such proceeds to satisfy any portion of the entire indebtedness; and payment of a portion of the debt through insolvency proceedings against the shipper did not deprive plaintiff of the right to the proceeds to pay the balance.

**Depositions:** INTRODUCTION IN EVIDENCE. Any error in allowing one party to introduce only parts of a deposition is cured by the action of the other party in placing the whole deposition in evidence: And ordinarily where one party has taken the deposition of the opposing party he may read in evidence such portions as contain alleged admissions without offering it in its entirety, and the other party may offer the balance if he desires to;

but whether this rule applies when the opposing party is a corporation and the witness its executive officer is not determined in this case.

**Parties:** BRINGING IN OF UNNECESSARY PARTIES.  Plaintiff brought this action to recover the proceeds of a shipment of cattle claimed to have been wrongfully converted by defendant.  Plaintiff's right to the .funds as against the shipper had been settled in another proceeding, and there was no controversy between plaintiff and the consignees.  *Held,* that neither the shipper nor the consignees were necessary parties: and that if defendant desired other unnecessary parties brought in, to settle all controversies growing out of the alleged conversion, it should have done so by cross petition and notice under the statute.

**Collateral Security:** ENFORCEMENT: AMOUNT OF RECOVERY.  The plaintiff filed its entire claim against the insolvent estate of the debtor and received a dividend thereon, and in this action in seeking to recover against defendant the proceeds of a shipment of cattle assigned to it as security for its claim.  *Held,* that plaintiff should not be permitted to profit to the extent of the dividend received, and should recover of defendant only the difference between the dividend and the amount of its claim by the assignment

*Appeal from Woodbury District Court.*—HON.  DAVID MOULD, Judge.

TUESDAY, NOVEMBER 17, 1908.

SUPPLEMENTAL OPINION, SATURDAY, APRIL 10, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

ACTION at law for the recovery of damages.  Verdict and judgment for plaintiff, and defendant appeals.  The material facts are stated in the opinion.—*Affirmed.*

*Hubbard & Burgess,* for appellant.

*Milchrist & Scott,* for appellee.

WEAVER, J.—At the time of the transaction in con-

troversy plaintiff was conducting a banking business at Ireton, Iowa, and one J. T. Dittmer was a purchaser and shipper of live stock at the same place, and a frequent borrower at said bank of money with which to carry on said traffic. During the same period Samuel E. Wood, James Wood, and Arthur Nash constituted a partnership under the firm name of Wood Bros., doing business as live stock commission merchants at the Union Stockyards in Chicago, Ill., and the defendant herein, Wood Bros. & Co., was a corporation doing a similar business at Sioux City, Iowa. The stock in this corporation was held by Samuel E. Wood, James Wood, and Thomas Dealtry. Its principal officers were Samuel E. Wood, president, James Wood, vice president, and James Dealtry, secretary; the latter being a resident of Sioux City and the person in actual charge and supervision of the business at that point. Both houses took consignments of live stock for sale, and each at times promoted said business by advancing money or making loans to stock shippers. The loans made by Wood Bros. in the vicinity of Sioux City, or some of them, were accomplished through the agency of Wood Bros. & Co. acting by Dealtry. Naturally the similarity of names under which these parties were doing business, their unity of interest, and the dual capacity in which they were acting tends to involve the record in some obscurity and confusion, and it doubtless created some confusion in the minds of persons dealing with them as to the identity of the party or parties with whom certain items of business were transacted. Dittmer, the stock shipper above named, had frequently consigned shipments of live stock to Wood Bros. in Chicago, and at other times to the Sioux City house. He seems, however, not to have comprehended the fact that the two houses were distinct entities, or independent concerns. In the fall of 1903 Dittmer told S. E. Wood that he might in the near future need some money in preparing cattle for market, and

Wood promised that it would be advanced to him, telling him when he wished to obtain it to apply to Dealtry in Sioux City. On December 29, 1903, Dittmer applied to Dealtry for the advancement of needed money. It appears that at this time Wood Bros. & Co. already held Dittmer's note for $623.22, and, as he desired $300 more, Dealtry took from him a written application for such loan upon a blank form directed to Wood Bros., but evidenced the entire indebtedness by two promissory notes, one for $523.22, payable February 15, 1904, and one for $400 payable March 15, 1904, making both payable to Wood Bros. & Co. The money actually advanced upon this occasion appears to have been from the funds of Wood Bros. & Co. On April 30, 1904, Dittmer, desiring to raise $1,000 to complete a shipment of cattle to Chicago, applied to the plaintiff bank for an advancement of the required sum. He was already owing said bank upon previous loans and for overdrafts upon his account to the amount of about $7,500, and it declined to enlarge the credit without security. Dittmer consented to give such security as he was able to furnish on condition that the bank consent to increase his total credit to some extent in order that he might realize money with which to pay certain other outstanding claims. It was finally arranged between them that he should give a new note for $10,500, to be secured by a second mortgage on his farm, and a chattel mortgage on his personal property, and by turning over to the bank a draft for $1,000 to be drawn on Wood Bros. against the shipment of cattle about to be made. The notes and mortgages were thereupon made and executed by Dittmer, and, together with the draft for $1,000 on Wood Bros., were delivered to the plaintiff; it being understood that Dittmer's wife would thereafter sign the mortgages. On the same day the cattle were shipped to Wood Bros., and, by mail departing at or about the same time, Dittmer notified the consignee of the shipment and

of the fact that the proceeds were payable to the plaintiff. On the same day Dealtry went to Ireton to collect the notes given by Dittmer to Wood Bros. & Co. as above related. Dittmer informed him of his present inability to pay or secure the debt, and told him that the proceeds of the shipment then being made had been turned over to the bank. Dealtry denies this, but Dittmer so swears. and their relative credibility was a question for the jury.

Moreover, the circumstances as a whole quite strongly corroborate the plaintiff's theory in this respect. Thereupon Dealtry returned to Sioux City, and by wire notified Wood Bros. of the shipment by Dittmer, and asked or directed them to withhold the proceeds of the sale for the payment of the two notes above mentioned, and at the same time he forwarded said notes to the Chicago firm by mail. This was the first time the notes had ever been out of the possession of the Sioux City house, though Dealtry claims that the original loan was made for and on account of Wood Bros., and that the notes were indorsed by Wood Bros. & Co. at or about the time they were given. The cattle reached Chicago Monday morning, May 2, 1904, and were sold the same day by Wood Bros. for the sum of $1,068.85. The draft made against this shipment was on the same day presented to said consignees, who refused payment. On the same day Wood Bros. wrote to Dittmer, acknowledging receipt of the shipment and of the letter notifying them of the draft given to the plaintiff, but saying: "We find that our house in Sioux City holds your paper for $923.22 and interest, all past due, and they wire us to hold this money to meet these notes, which we presume will be satisfactory to you. If so, we will send you the canceled notes and the balance of the money." This outline omits many minor details, all having some bearing on the claims of the respective parties, but we have related sufficient to indicate the general nature and trend of the controversy.

The plaintiff brings its·action at law, setting forth its version of the transaction, and asks judgment against Wood Bros. & Co. for the amount of the draft of which money it claims to have been deprived by the wrong of said defendant. Defendant resists this demand, alleging, in substance, that the notes were at all times owned by Wood Bros., and that the only relation of Wood Bros. & Co. to the transaction was that of mere agent or local representative. It also pleads by way of estoppel that, when Dealtry was in Ireton on April 30, 1904, he applied to the plaintiff bank for information as to the financial condition of Dittmer, and especially whether he had drawn any draft against the shipment in question, and was informed by said bank that said Dittmer was in sound financial condition, that the cattle so shipped had been fully paid for and that plaintiff had no interest therein, and that, in reliance upon this information, Dealtry returned to Sioux City without taking other steps to collect or secure said claim. By way of further estoppel, it is also alleged that on May 3, 1904, Dittmer made a general assignment for the benefit of his creditors, and that plaintiff filed with the assignee its claim for the indebtedness due to it from Mr. Dittmer, including therein the item of $1,000 for the amount of the unpaid draft on Wood Bros. This claim it is alleged was allowed, and a dividend paid thereon. The election to pursue such remedy, the defendant claims, is inconsistent with the right to maintain the present action. Defendant also states that by plaintiff's conduct in filing said claim with the assignee, Wood Bros. were led to believe that plaintiff had elected to waive its claim to the proceeds of said cattle and the defendant, Wood Bros. & Co., was deprived of its right to present the claim for the amount of said notes against the estate.

The issues thus joined were tried to a jury resulting in a verdict and judgment for plaintiff, and the defend-

ant appeals. The following are the principal propositions on which a reversal of the judgment below is demanded.

I. At the close of the plaintiff's testimony in chief, the appellant moved for a verdict in its favor on the ground, among others, that the loan made through Dealtry to Dittmer was for and on account of Wood Bros. and the plaintiff's right of action, if any it had, was against said firm, and not against the corporation of Wood Bros. & Co. Upon the overruling of this motion error is assigned. The correctness of the ruling of the trial court in this respect is too clear for argument. To say nothing of other circumstances bearing in the same direction, the notes were made payable to Wood Bros. & Co. They were entered upon its books among the bills receivable of the corporation. They were retained in its possession and control until after the shipment of cattle by Dittmer on April 30, 1904, and, after the draft drawn against said shipment had been with defendant's knowledge turned over to the plaintiff, when for the first time they were forwarded to Wood Bros. with instructions to apply the receipts from the shipment to their payment. When this had been done, Wood Bros. notified Dittmer that the money had been appropriated, not to the payment of a debt to that firm, but to the payment of paper held by "our house in Sioux City." On hearing of this action by Wood Bros., Mr. Dealtry, writing to the firm for Wood Bros. & Co., says: "I thank you for following our instructions, especially as we were compelled to act in haste, as I felt that this was the only way for us to get paid this money within any reasonable length of time, if ever." Surely with these facts in evidence it cannot be said that a verdict which holds appellant to be the real party in interest in the collection of said notes is without sufficient support. We have therefore, for the purposes of this case, to treat the appellant as the owner of these notes. As it is also chargeable through its officer and

*1. CONVERSION: parties.*

agent, Dealtry, with notice of the fact that Dittmer had given the plaintiff a draft on Wood Bros. against said shipment of cattle, it could obtain no lawful advantage over the plaintiff by procuring Wood Bros. to dishonor the draft and arbitrarily apply the money in their hands to the payment of said notes. There was no error in denying the motion to direct a verdict on this ground.

II.    Counsel for appellant, contending that plaintiff did not pay out any money on the draft in question and parted with no consideration therefor, produced a witness by whom it was sought to prove the custom and usage among live stock shippers in drawing or making drafts of this kind. On being asked by the court for an explanation of the purpose of the offered testimony, counsel responded as follows: "The purpose of this is to show that in the live stock business shippers do not draw these drafts as passing title to the property, or as assigning the fund against which they are drawn; but that in the live stock business the shipper almost universally makes a draft of this kind to hurry around the transaction, and get returns on his money. For instance, if a shipper here should ship a car load of cattle to Chicago, the commission merchant would send back a check to the shipper, then the shipper would place the check in the bank, and the bank here would take the check for collection, and the proceeds of the check would not get back here so as to stand to his credit finally for about a week, and it would take from eight days to two weeks to get a transaction around. I desire to show that these drafts are drawn, as a matter of course, to give impetus to the business, and hasten the returns on the transaction." Plaintiff's objection to the offer was thereupon sustained, and appellant preserved an exception to the ruling. The ruling was correct. Plaintiff does not base its claim to receive the selling price of the cattle upon any implied contract or promise to be

*2. EVIDENCE: custom: variance of contract: admissibility: pleading.*

inferred from Dittmer's act in turning over the draft or bill of lading, or from the general method of transacting such business, but upon an alleged express contract, by which, in consideration of the extension of time upon his existing debt and of further advancement, he undertook to assign or transfer to plaintiff the proceeds of said shipments as security for the payment of his entire indebtedness. If such contract was made, and in pursuance thereof Dittmer delivered the draft to plaintiff and Dealtry had notice of the fact, the assignment was effective against him and his principal. While proof of custom may be competent to explain words or terms of doubtful signification, or to show a trade usage by which certain words or expressions are given an arbitrary or technical meaning, it is the well-established rule in this State that proof of custom or usage is not admissible to defeat a contract or to vary its express terms. *Wanless v. McCandless,* 38 Iowa, 20; *Windland v. Deeds,* 44 Iowa, 98; *Smyth v. Ward,* 46 Iowa, 339. If to this general rule there be any exception, the party relying thereon and desiring to offer evidence of custom or usage to affect the interpretation of a contract must plead it. *Eller v. Loomis,* 106 Iowa, 276; *Citizens' Bank v. Chambers,* 129 Iowa, 420. Moreover, even if the alleged custom had been proved, it is in no manner inconsistent with the truth of plaintiff's claim that the proceeds of the sale of this particular shipment of cattle were assigned to it by Dittmer, and that the draft was delivered to it to effect such transfer. The testimony offered was clearly irrelevant to the issues, and without any material bearing upon the rights of the parties.

The statement by counsel that plaintiff paid nothing, and parted with nothing in consideration of the assignment of the proceeds of the cattle, is not sustained by the record. The showing made by the plaintiff in that respect, as we have already seen, is that this assignment,

together with the mortgages above mentioned, was given to

3. SALES: assignment of proceeds: consideration.

secure both Dittmer's prior indebtedness and the additional advances to him within the maximum limit of $10,500.    Additional advances were in fact made, and, while it may be true that the aggregate of this advancement when decreased by subsequent deposits to Dittmer's credit was somewhat less than the amount of the draft, plaintiff was clearly entitled to the benefit of its contract, and of the securities so obtained for its entire claim.

III.   Is the plaintiff estopped by reason of having filed and proved its claim against Dittmer in the insolvency proceedings?   We are unable to see how such action

4. ELECTION OF REMEDIES: conversion: estoppel.

calls for any application of the rule concerning election of remedies.   The act of a secured creditor in proceeding against his debtor to enforce payment of a just claim is not in any manner inconsistent with his pursuit of any proper remedy against a third person who wrongfully converts or destroys his security.   For instance, a landlord may sue his tenant for unpaid rent, and at the same time, in a separate action, seek judgment in damages against one who has wrongfully converted or destroyed the property upon which he held a rent lien.   True, he will not be allowed to recover in the aggregate more than the amount of the debt secured, and, as between himself and other creditors, he may sometimes in equity be compelled to exhaust certain liens before resorting to others, but, subject to such equitable limitations, he does not waive the one right by insisting upon the other.   Nor do we find any special or exceptional circumstances in the present case which takes it out from under this rule.   It appears that Dittmer's wife refused to join in the mortgages made by him to the plaintiff, and for this reason and perhaps others, when Dittmer made his assignment for the benefit of creditors, contest arose as to the validity of the

mortgage liens. In view of this contest and possible doubts as to the outcome, the parties finally reached an agreement upon which the district court entered a decree providing that the mortgages should be held to be security for only that portion of Dittmer's debt arising after the date of said instrument which sum was found to be $1,023.13, and the same was established as a preferred claim.

It was also provided by said decree that, if the plaintiff should succeed in making good its claim to the money in the hands of Wood Bros., the amount so realized should be applied to the payment *pro tanto* of its general claim against Dittmer. From this circumstance appellant seeks to deduce the proposition that plaintiff's claim to the proceeds of the shipment of cattle has been allowed in the assignment proceedings and paid in full, or in part as a preferred obligation of Dittmer. But such is not the case. That claim has at all times been held by the plaintiff as security, not only for the additional advancements to Dittmer, but for the prior indebtedness as well, and the satisfaction or discharge of the first item mentioned, or its allowance as a preferred claim against the assignee, would have no effect to relieve the fund from the plaintiff's lien for the other item. So far as we are able to discover, plaintiff has done nothing to throw appellant off its guard or mislead it to its injury, and there is nothing in the record upon which to ground an estoppel. The jury has found that appellant seized or procured the appropriation of the proceeds of the cattle sale wrongfully. If its confidence in its ability to retain the money so realized was such that it did not care to file any claim with the assignee or take steps to force Dittmer into bankruptcy, it is in no position to resist plaintiff's demand for an enforcement of its security. There is no pretense that appellant applied to plaintiff

5. SAME: assignment of funds as security: application.

for information as to its purposes in this regard, or was in any manner led to believe that plaintiff would waive or forego its right to the security, and, if appellant mistakenly pinned its faith to what we have hereinbefore found to be a mistaken conclusion of law, it affords no ground upon which to base an estoppel.

IV.   The plaintiff, in support of its action, took the deposition of Samuel E. Wood, a partner in the firm of Wood Bros. and president of the defendant corporation. On the trial plaintiff did not offer the deposition in evidence, but, after introducing a witness who was present at the taking of the deposition and identifying the signature of Samuel E. Wood thereto, offered in evidence certain anwers or statements therein made by said Wood as admissions having a legitimate bearing upon the issues. To this offer the appellant objected on the ground that, the deposition having been taken by the plaintiff, it could not be permitted to introduce isolated or selected parts of it, and that the offer, if made at all, must be of the entire deposition.   The objection being overruled, counsel for plaintiff read in evidence certain questions and answers selected from the deposition.   When plaintiff had rested its case in chief, defendant put the entire deposition in evidence. In this state of the record, it is unnecessary for us to decide whether the device resorted to by plaintiff's counsel was a sufficient avoidance of the rule upon which appellant's objection was based, because, the entire deposition having been afterwards placed in evidence at the instance of appellant itself, the error, if any, in overruling said objection, was cured. *Walkley v. Clarke,* 107 Iowa, 451. Indeed, this court appears to have held that, where one party to a suit has taken a deposition of an opposing party, he may read such portions as contain alleged admissions without being obliged to introduce it in its entirety, leaving it to the other party to introduce the re-

6. DEPOSITIONS: introduction in evidence.

mainder of the examination if he sees fit so to do. *Van Horn v. Smith*, 59 Iowa, 142. Whether this exception would apply where the opposing party is a corporation and the witness is an executive officer thereof we need not now determine.

V. By demurrer to the petition and by subsequent motion appellant asked the trial court to rule that Dittmer and the firm of Wood Bros. were necessary parties to the action. The same proposition is urged to this court. There was no error in the ruling. The case presents no controversy to be settled between the plaintiff and Dittmer. As between them, their several rights relating to moneys arising from the shipment of cattle were settled by the decree entered in the assignment proceedings. If the appellants wished Dittmer or Wood Bros. or both brought into the case in order to settle in one action all controversies growing out of the alleged conversion, it could very readily have brought about that result by filing a cross-petition and serving the required notice. Code, section 3574.

7. PARTIES: bringing in of unnecessary parties.

Counsel have argued several other questions, but they are so closely related to or dependant upon those already disposed of that we shall not prolong this opinion for their discussion. It may also be added that the material fact questions involved in the controversy were fairly submitted to the jury, and the findings thereon are conclusive upon this court. The instructions given by the trial court upon the law of the case accord with the views we have expressed, and the record as a whole presents no reversible error.

The judgment appealed from is therefore *affirmed*.

### SUPPLEMENTAL OPINION.

PER CURIAM.—On re-examination of the record we are led to the conclusion that the judgment in plaintiff's favor

was excessive.    The plaintiff should not be allowed to reap any greater advantage than it would have gained, had defendants paid its claim on demand.    As the controversy stood, plaintiff was claiming the amount of the draft

**8. Collateral security: enforcement: amount of recovery.**

from defendants, and at the same time was asserting against Dittmer's insolvent estate its full claim including the loan, payment of which had been secured by this same draft, and on this claim, thus increased, it has received a dividend.    If it is now permitted to recover the full amount of the draft from the appellants, it is reaping a profit to the extent of the dividend it received in the loan last mentioned.    To that extent plaintiff's recovery should be reduced.    We find no reason for changing our views on other matters argued in the petition for rehearing.    The plaintiff's recovery should therefore be reduced by the sum of $395, and, as thus modified, the judgment of the district court will stand affirmed.    Petition for rehearing *overruled.*

One-fourth of the costs of this court are to be taxed to the appellee.