Miller, J.
I. On the trial plaintiff’s counsel called “ H. Willmering, a competent witness, and offered to prove by him that the defendant was a dealer in stock, and understood the meaning of the phrases and terms used by men in that' peculiar business, and offered to prove further by him how such contracts were understood by stock dealers, to which class plaintiff and defendant belong. That by the said class of dealers, contracts written and worded as these, upon which suit was brought in this case, were understood as follows:
“ That, if the buyer did not declare his option or fix the time when the stock should be delivered, then the seller was understood as contracting that the stock should be delivered upon the last day fixed, or, as in this case, upon the last days of the months named; and that defendant thus understood the contracts.” To'which the defendant objected, and the evidence was excluded. Plaintiff excepted and assigns this ruling as error.
The appellant cites us to authorities holding that testimony of experts may be received to aid the court in reading a written instrument. 1 Greenl., § 280; and that if a contract refers to principles of science or art, or uses the technical phraseology of some profession or occupation, or common words used in a technical sense, their exact meaning may be shown by the testimony of experts. 2 Parsons on Contracts, é92, n{h) 5th ed. These rules are elementary and well established. But it is equally well settled that the terms of every written instrument are to be understood in their plain, ordinaiy, and popular sense, unless they have generally, in respect to the subject-matter, as by the knowledge of trade, or the like, acquired a peculiar sense distinct from the popular sense of the same words; or unless the context evidently points out that in the particular instance, and in order to effectuate the immediate intention of the parties, it should be understood in some other peculiar sense. 1 Greenl. Ev., § 278.
*201 “ When a new and unusual word is used in a contract, or when a word is used in a technical or peculiar sense, as applicable to any trade or branch of business, or to any particular class of people, it is proper to receive evidence of usage to explain and illustrate it; and that evidence is to be considered by the jury; and the province of the court will then be to instruct the jury what will be the legal effect of the contract or instrument, as they shall find the meaning of the word modified or explained by the usage. But when no new word is used, or when an old word, having an established place in the language, is not apparently used in any ip.ew, technical, or peculiar sense, it is the province of the court to put a construction upon the written contracts of parties, according to the established usage of language, as applied to the subject-matter.” Eaton v. Smith, 20 Pick. 150; Brown v. Orland, 36 Me. 376; Burnham v. Allen, 1 Gray, 496.
Words which do not of themselves denote that they are used in a technical sense are to have their plain, popular, obvious and natural meaning. 6 Watts & Serg. 114.
In the case of Pilmer v. The Branch of the State Bank at Des Moines, 16 Iowa, 321, cited by appellant, this court held that parol evidence was admissible to show the peculiar meaning of the term “ ewrreneyf in which a draft was payable.
It was so held upon the ground that the term “ cu/rrmcy ” is “ far from having a settled, fixed, and precise meaning.” So also in the case of Thompson v. Sloan, 23 Wend. 71, parol evidence was admitted to show that Canada money was understood at Buffalo to mean bills of the Canada banks. In this case, also, it being uncertain what species of money — bank bills or com — was meant by the parties, evidence showing the sense in which the term was understood in the particular locality where the contract was made, was held properly admitted.
But in the case before us, no technical words are used, *202 nor do tlie words used denote that they are used in a technical sense, nor is there 'any uncertainty or ambiguity in any of the words. Indeed it was not claimed that any word in the contract had a signification among “ stock dealers ” differing from their ordinary and well understood meaning, but the effect of the evidence offered was to show what the legal effect of the contract was understood to be among stock dealers. This, we believe, is further than ever the rule has been held applicable.
-II. The next error assigned is the giving of certain instructions by the court, and the refusal to give instructions asked by the plaintiff.
The instructions asked by plaintiff and refused are as follows:
“ 1. These contracts are mutual and equally binding on both parties. Plaintiff only reserved the option of having the hogs delivered any time during the months named, by giving ten days’ notice, but if no notice was given, the hogs should have been delivered on the last day of the month named.
“ 2. According to these contracts, one lot of hogs was to be delivered in the month of June and one in the month of December. Plaintiff only reserving the right of fixing the time in each month if he chose to do so; if he did not, then it was defendant’s privilege and duty under the contract to deliver them on the last day of the month.”
The court instructed the jury in the charge, that,
“Under these contracts which have been offered in evidence, plaintiff cannot recover unless he gave the defendant notice of the time when he wanted the hogs delivered. Except you should find that defendant had given plaintiff to understand that he had abandoned the contract or would not perform it, or that it was out of his power to do so, or you find that it was) in fact, out of his power to have performed the contract. If this was the case, then plaintiff would have been excused from giving the notice.”
*203 In refusing the instructions asked and by giving tbe above there was error. By tbe terms of tbe contracts it was tbe defendant’s duty to deliver tbe hogs at tbe place, and at some time within tbe months named, tbe plaintiff having tbe option to fix tbe particular dates of delivery, by giving ten days’ notice to tbe defendant. If no such notice was given, tbe defendant was not thereby released from bis obligation to deliver tbe bogs within tbe specified months. Tbe notice was not a condition precedent, and yet such is tbe construction given to tbe contracts by tbe court below, unless such notice was waived or excused by tbe act of tbe defendant.
Tbe court further instructed tbe jury as follows:
“If you find that defendant’s letter of May 7, 1868, which has been produced in evidence, was received by plaintiff and not replied to by him, and that there was no other communication between tbe parties in reference to tbe performance of tbe contract, and no other facts as to defendant’s willingness or ability to perform tbe contract have been established except what is disclosed in said letter, then plaintiff bad no sufficient cause for not giving notice of tbe time at which be desired tbe bogs to be delivered.” Tbe following is tbe letter referred to :
“Washington, May 7, 1868.
“Mr. H. Willmering:
“ Dear Sir — I am very sorry to inform you of my misfortune. I have lost all that I have got, by speculation, and am not able to fulfill my contracts with you, for I have not got tbe money to buy five bogs. Every thing I have got has gone for debt, and you will, as a friend, pity me in my misfortune and send me those contracts that you have got, and I will try and send you tbe money you paid me if I can. Tours truly,
(Signed.) Robert McGaughey.”
This instruction was also erroneous. It assumes that tbe defendant was under no obbgation to deliver tbe bogs *204 unless the plaintiff gave him ten days’ notice to do so, and then directs the jury that this letter of the defendant to the plaintiff of itself, if received, did not excuse the plaintiff from giving such notice. Whether the receipt of the letter by the plaintiff would have excused him from giving notice in case he was bound to do so we do not determine, for ' we hold that the contract obliged the defendant to make the delivery, during the specified months, without notice; that the giving of notice to deliver on particular days was at the plaintiff’s option.
For the errors mentioned the judgment is reversed and a new trial ordered.
Reversed.