CASH v. HINKLE.

1. **Contract:** CONSTRUCTION : EVIDENCE OF CUSTOM. Where it is not apparent that the language of a contract is used in any new, peculiar or technical sense, extrinsic evidence is not admissible to aid in its construction.

2. —— Contract for the sale and delivery of "sixty-five head of fat hogs, to weigh two hundred and twenty-five pounds and over." *Held,* in an action for refusing to receive the hogs, 1. That the contract called for hogs weighing 225 pounds each; 2. That parol evidence to the effect that by custom this language was understood to mean that the hogs should *average* that, was not admissible. BECK, Ch. J., dissenting.

3. **Sales of personal property:** PERFORMANCE. Under a contract for the sale and delivery of fat hogs of a certain character or weight at a specified time and place, it is the duty of the seller to have them there, as required, ready for delivery; and if as first offered the hogs do not comply with the contract, the vendee is under no obligation to comply with a request of the vendor that he go into adjoining lots owned by other parties, and with whom the seller has made arrangements to that effect, and select therefrom enough hogs of the proper quality to make the lot comply with the contract.

*Appeal from Johnson Circuit Court.*

TUESDAY, JUNE 17.

THIS is an action at law for damages for an alleged refusal of defendant to receive a lot of hogs according to a written con-

tract between the parties. There was a jury trial, and a verdict and judgment for plaintiff. Defendant appeals.

*J. D. Templin* for the appellant.

*Clark & Haddock* for the appellee.

MILLER, J. — The contract, for the breach of which the action is brought, is embraced in two instruments of writing, one of which is signed by the plaintiff and the other by the defendant, and are as follows :

1. CONTRACT: construction: evidence of custom.

"*January 28th,* 1871.

"Bought this day of John Cash, sixty-five head of fat hogs, to weigh (225) two hundred and twenty-five pounds and over, no piggy sows, to be delivered at Iowa City, between the first and last of May next. Paid $302 on the contract.

"WILLIAM HINKLE."

"*Jan.* 28, 1871. Sold this day to William Hinkle, sixty-five head of fat hogs, to weigh two hundred and one-fourth, and to be no piggy sows, at $7¼ per hundred, to be delivered at Iowa City, between the first and last of May next.

"Received payment of $302 dollars.

"JOHN CASH."

These two instruments differ slightly in a few words, but they form one contract, and no question arises as to the difference of the wording.

Evidence having been given tending to show that the plaintiff had certain hogs, at the place and time for delivery of which he gave the defendant notice; and the plaintiff having testified that the hogs would not each weigh 225 pounds, the court permitted the plaintiff, against the defendant's objections, to give parol extrinsic evidence of "what the *custom* was, under such contracts, and what the average of a lot of hogs, and what they should be, as to the weight of the *several* hogs making up

the general average of 225 pounds per head," to comply with the written contract. This ruling is assigned as error.

We had occasion to examine the question here involved, in *Willmering* v. *McGaughey*, 30 Iowa, 205, and we there held, that while it is competent to receive extrinsic evidence to aid the court in construing a contract, when it refers to principles of science or art, or where technical phraseology of some profession or occupation is used, or where the writing uses new and unusual words, or common words in a technical sense, yet such testimony is not admissible where it is not apparent that the language is used in any such new, peculiar, or technical sense, but that the contract will be construed according to the established usage of language as applied to the subject-matter. That case arose upon a contract for the delivery of hogs, very similar to the one in this case, and contained these words: " To be delivered at Washington, Iowa, at Willmering's option, by giving ten days' notice, any time in December, 1868." It was proposed to give parol evidence of experts, to show how this language was understood among stock dealers, and it was held inadmissible, on the grounds above stated. It seems clear to us, that under the holding in that case, the evidence admitted in this was not competent and should not have been admitted. The contract reads : " Sixty-five head of fat hogs to weigh (225) two hundred and twenty-five pounds and over." These words are susceptible of but two possible constructions, namely : that the 65 fat hogs should each weigh 225 pounds and over ; or, that they should weigh that number of pounds in the aggregate. It would be absurd to say, that the parties meant by the words used, that the 65 hogs should weigh, in the aggregate, 225 pounds, which would be less than four pounds each ; so that the only fair construction is, that the lot of hogs should each weigh 225 pounds and over. The defendant purchased of the plaintiff 65 head of hogs. Those 65 hogs they agree shall weigh 225 pounds and over, *each*. Not in the aggregate. Now it cannot be competent to give extrinsic evidence to the effect that, according to an understanding among stock dealers, if the whole lot of hogs weighed enough

in the aggregate to bring the average up to 225 pounds, the contract would be complied with in this particular. The language used is plain, common language. It is neither technical nor used in a technical sense. There is simply an omission of a word to *express* whether the weight specified is the weight of *each* hog or the aggregate weight of all the hogs. It is very clear that the former was intended, and that the word "each" is to be implied. The contract must be read as if the word "each" were inserted where it is so clearly implied, and being so inserted the language is too clear and unambiguous to be varied, contradicted or explained by parol evidence. It was, therefore, error to admit the evidence complained of by defendant. It falls clearly within the doctrine of *Willmering* v. *McGaughey, supra.* The written contract must control the rights of the parties in this respect.

The seventh and eighth instructions given by the court to the jury embodying the same theory of the law, upon which this evidence was admitted, was also erroneous for the reasons above stated.

The court should have construed the contract without the aid of parol evidence, and told the jury that, by the terms of the written contract, each of the 65 hogs should weigh not less than 225 pounds.

II. There was evidence tending to show that on the 31st day of May, 1871, the plaintiff brought to the place of delivery 65 head of hogs; two of the lot were crippled so as to be unable to walk and were thrown out by the weigher; and ten or fifteen head that would not weigh over 200 pounds and were not fat. The plaintiff proposed to the defendant that he (defendant) could or might go into another pen near by, where there were about 90 hogs belonging to other parties with whom plaintiff had made arrangements to that end, and select two hogs to make up the 65 head and enough more instead of those he did not like. This the defendant refused to do. The plaintiff did not, himself, go and make such selection, or offer so to do, either with or without the defendant, and the defendant refused to receive

Sales: performance.

the 63 head, and these were all the hogs plaintiff had at the time and place of delivery.

On this evidence the court gave the following instruction: "Although the hogs which the plaintiff first offered to the defendant may not have been such hogs as he was bound to deliver to the defendant, yet, if the plaintiff made such arrangements with other parties who there had hogs at the place where the delivery was required to be made, that the defendant had the right to *select* from about 90 hogs such hogs as were required from plaintiff under the contract, and if he could have made such selection and failed and refused to do so, and if the plaintiff was then ready to deliver to the defendant from such drove such number and quality of hogs as were required by said contract, and if said defendant refused to make a choice or receive the hogs then he is liable to the plaintiff on said contract."

In giving this instruction there was error. It was the duty of the plaintiff to have the kind and number of hogs specified in the contract at the place of delivery, *ready to deliver them to the defendant.* The latter· was not required to go into another lot of hogs belonging to other parties, and select therefrom such hogs as would make the lot plaintiff had agreed to deliver, comply with the contract. It was the business of the plaintiff to do this. If his lot of hogs, "as he first offered them" to the defendant, were not such as he was bound to deliver, the defendant was not required to receive them, nor was it the duty of the defendant to make them by his selections from a lot belonging to other parties, such as the plaintiff was bound to deliver. If the hogs did not, as at first offered, comply with the contract, it became the duty of the plaintiff to make them comply, else the defendant was not bound to accept. *Williams* v. *Triplett,* 3 Iowa, 518; *Spafford* v. *Stutsman,* 9 id. 128. It was the duty of the plaintiff to have the hogs at the time and place of delivery, set apart and designated for that purpose, unless this was excused by a refusal to receive, as in *Williams* v. *Triplett, supra;* see, also,

*Games* v. *Manning*, 2 G. Gr. 251, and cases cited. This element, however, is not embodied in the instruction.

For these errors the judgment of the circuit court is

Reversed.

BECK, Ch. J. — I cannot concur in the conclusion of the foregoing opinion upon one point. I think the evidence of the custom was properly admitted. Contracts must be construed with reference to customs prevailing in regard to their subjects, and while the express terms of a contract may not be changed or modified by parol evidence, yet the meaning of its words may be explained and applied thereby to their proper objects. A custom cannot be set up against the clear intention of the parties to a contract as expressed therein, but the words of a contract must be construed in reference to a custom affecting the subject and known to the parties, that the true intention may be ascertained. In the contract before us the parties agree that the hogs sold are " to weigh 225 pounds." Now the custom in question does not change the import of the words. It simply applies to them a meaning. The language of the contract is not explicit and is left by the parties to interpretation. Its meaning, whether each hog or the average of all the hogs must be 225 pounds in weight, may well be ascertained by proof of a custom governing the trade, in view of which the law presumes the parties contracted. See authorities cited in 2 Parsons on Contracts, § 9, pp. 51–52; *Riandskoff Bros.* v. *Brett*, 14 Iowa, 102.

OPINION ON REHEARING.

Since the filing of the foregoing opinions a petition for a rehearing has been filed by counsel for appellee, in which they controvert the fact upon which the first and main point of the majority opinion is based. They say " *It is not true that any testimony under that head was given to the jury.*" The record recites, as they admit, that the court below overruled defendant's objection and " *decided that*

*the plaintiff might show by parol what the custom was under such contracts, and what the average of a lot of hogs making up the general average of 225 pounds per head to make up the general average as specified in the written contract. And the witness, with other witnesses, gave evidence as to what such average should be to comply with the contract."* The record also shows that appellant duly excepted to this ruling. In the petition for rehearing it is attempted to show by argument that the evidence objected to was not in fact received. However reasonable this argument may appear, yet in the face of the direct and positive statement in the record that such evidence *was given* by several witnesses against the appellant's objection, we must follow the statements found in the record. Again, appellee's counsel claim that if the evidence "is not found in the record the recital must be taken as untrue." Not so. It was not necessary to embody the evidence given on this point. The character of the evidence is stated, and it is stated positively and unequivocally, that the evidence was received. This is sufficient to enable this court to review the ruling of the court below admitting the evidence.

It is insisted by counsel in their petition for rehearing, that this testimony could not and did not work any prejudice to the appellant, since the court, in the seventh and eighth instructions, construed the contract so as to render the evidence unnecessary. We have seen, in the opinion first filed, that the court erred in charging the jury in these instructions to the effect, that under the contract it was only necessary that the 65 hogs should be of the *average* weight of 225 pounds each. The court erred in the first place in admitting evidence to show that by a custom among dealers such was the proper construction of the written contract, and then erred in so construing it in the charge to the jury.

From the record it would seem that the court based its construction of the contract upon this evidence of custom which we hold was improperly admitted. If this be correct, then the admission of the evidence of custom was prejudicial to the

appellant, and if the court gave the seventh and eighth instructions as the law, independently of this evidence, the appellant was thereby prejudiced. It is said, however, that there was no proper exception taken to these instructions. This may be conceded, but there was proper exception taken to the evidence improperly admitted, which presents the same question for our determination, namely, the proper construction of the written contract. We find and hold that the court below erroneously permitted a wrong construction to be put upon it by parol testimony, and then followed that wrong construction in its charge to the jury. That these rulings were substantially prejudicial to the appellant there can be no doubt, and the exception to the admission of the evidence sufficiently saved the question to require us to pass upon it.

The petition for rehearing must be

Overruled.