STANSBURY v. KEPHART ET AL.

1. **Evidence:** ERRONEOUS ADMISSION OF: PREJUDICE. Evidence as to immaterial matters held prejudicial, and to have been erroneously admitted.

2. ————: CONTRACT: CUSTOM. Evidence of a custom is immaterial in an action upon a special contract.

3. **Instruction:** CONTRACT. An instruction as to the right of the plaintiff to recover upon an alleged contract considered, and held erroneous.

*Appeal from Linn Circuit Court.*

FRIDAY, OCTOBER 22.

ACTION to recover upon a contract for services. In 1874 J. E. Stansbury, the defendant's intestate, was a practicing physician in Linn county. In that year the plaintiff, a younger brother, commenced residing with him and studying medicine in his office, and continued to reside with him, studying medicine and assisting him to some extent, except when absent at a medical school, until some time in 1877.

In September, 1878, J. E. Stansbury died. In April, 1879, the plaintiff filed a claim for $900 against his estate, which claim is set out in the following words:

"E. B. KEPHART AND EMMA L. STANSBURY, *Adm'rs of the Estate of J. E. Stansbury, deceased.*

"To G. W. STANSBURY, Dr.:

"On special contract whereby the said deceased was to pay the said G. W. Stansbury the sum of $25 per month between the 10th day of March, 1874, and the 10th day of July, 1877, for every month between said dates last mentioned, except four months between said dates, which was to be deducted from said time, while said G. W. Stansbury was at medical school, said deceased to also furnish board and washing; the consideration for said wages being services in

keeping drug store and assisting in medical practice the deceased, who was a physician. After deducting said four months from said time there remains thirty-six months, for which said G. W. Stansbury claims on the above special contract at $25 per month the sum of $900."

The defendants denied that J. E. Stansbury made such contract, and averred that the plaintiff was fully paid for all services rendered by the instruction which he received in medicine and medical practice.

They also filed a counter-claim for board, clothing, etc., amounting to $1,121.26.

There was trial by jury, and verdict and judgment were rendered for the plaintiff for $854. The defendants appeal.

*Blake & Hormel*, for appellants.

*H. G. Bowman*, for appellee.

ADAMS, CH. J.—I. Evidence was introduced tending to show that the deceased at some time had some financial trouble at Moline. Thereupon the plaintiff asked one Kelley, who was a witness, a question, which is in these words: "Did the doctor ever tell you who was the author of this trouble at Moline that caused him to mortgage up his property so?"

<span>1. EVIDENCE: erroneous admission of: prejudice.</span>

To this question the defendant objected for the reason that the same is immaterial and incompetent. The court overruled the objection, and the witness answered: "He appeared to blame his brother-in-law, Mr. Scott Horn, that gentleman sitting there. He said Scott was to blame for it he thought— 'skullduggery,' and something to that effect."

How the plaintiff could have conceived that his right of recovery depended to any extent upon what the deceased said about Scott Horn, or any other person, being the author of his financial trouble at Moline, we are unable to see. It sometimes happens, however, that attorneys conceive that

they can serve their client's interests by abusing the opposite party, or, in case they cannot do that, by abusing the party's relatives, and especially if the relatives are present and manifesting an interest in the trial. The object, of course, is to create a prejudice against the party. In introducing evidence of what the deceased called the "skullduggery" of Scott Horn, who, it appears, was Mrs. Stansbury's brother, the object, doubtless, was to create a prejudice against Mrs. Stansbury herself, who was principal defendant. The evidence was manifestly improper, and, we think, not without prejudice.

II. The defendants introduced as a witness one Dr. S. M. Smith, and offered to prove by him the terms upon which *2. ——: contract: custom.* medical students are customarily taken in medical offices. The evidence was excluded, and, we think, properly.

The plaintiff declares upon a special contract. He can recover only by proving it as alleged. If he does prove it, and the performance upon his part, his right of recovery cannot be denied.

III. The defendants assign as error the refusal to give certain instructions asked. But no exception appears to have been reserved to the refusal to give them, and we cannot consider them.

IV. An instruction given, and duly excepted to, is in these words: "If, on the other hand, you are satisfied from *3. INSTRUCTION: contract.* the evidence that no such contract was entered into for the payment of $25 per month, and that whatever services were rendered were to be in consideration of instruction given him by said J. E. Stansbury, and whatever opportunity he had in the experience in the business, then your verdict should be in favor of the estate."

This instruction, it appears to us, is erroneous. As the plaintiff declared upon a special contract it was sufficient to justify a verdict in favor of the defendants if the jury found simply that such contract was not made. But the instruc-

tion carries an implication that to justify a verdict for the defendants the jury should not only find that there was no contract to pay $25 per month, but that the contract was to pay the plaintiff for his services in instruction, and the opportunity for experience. It is of no consequence, so far as the plaintiff's right of recovery is concerned, what the contract was if it was not what the plaintiff alleged. The idea of the court doubtless was to afford a suggestion as to what might have been the contract in the absence of the one sued on, which would be sufficient to explain why the plaintiff entered into and remained in the employ of the decedent. But we think it was liable to mislead and confuse the jury.

Besides, the court seems to have overlooked the fact that the plaintiff had board with the decedent, as well as instruction and experience in practice. In this view we think that the instruction was calculated to mislead.

REVERSED.