C. R. STEELE, Appellee, v. M. E. ANDREWS & SONS, Appellants.

**Sales:** VARIANCE OF EXPRESS WARRANTY BY PROOF OF CUSTOM. A custom cannot be shown to contradict a written agreement or to affect the rights of parties as fixed by the plain terms of the contract; so that where. blooded cows are sold at auction under an express warranty that they are breeders, the seller cannot show as a defense to an action for breach of the warranty, that according to custom among breeders such cows sold in that manner which are nonbreeders shall be returned to the seller, that he shall have a reasonable time in which to breed them, and in case he is successful they shall be returned to .the buyer, otherwise the purchase price shall be returned.

**Same:** EXCLUSION OF ·EVIDENCE: HARMLESS ERROR. Exclusion of evidence as to what would be a reasonable time in which to breed an animal, sold under a warranty to be a breeder, was harmless, where the court told the jury to find for defendant if he had the right under the contract to breed the animal after sale.

**Same:** ACTION FOR BREACH OF WARRANTY. The buyer of an animal sold on the warranty that she is a breeder may keep the same and sue for the breach rather than rescind and return the animal. And a return of the animal is not a condition precedent to a suit for the breach.

**Same:** EVIDENCE: HARMLESS ERROR. The admission of opinion evidence on an issue found for appellant is harmless error. Nor can appellant complain of evidence offered by the appellee which amounts to no more than that offered by appellant himself on the same question.

**Same:** BREACH OF WARRANTY: EVIDENCE. Where cows are bought chiefly for breeding purposes, it is permissible to show that if they had been breeders as warranted they would have been worth the price paid, but that for beef purposes they were worth a comparatively small sum.

**Same:** KNOWLEDGE OF BREACH: EXPERT EVIDENCE. Where a defect in an animal sold on a warranty is fully described so that the jury can determine therefrom whether the same was readily observable, expert evidence on that subject is not admissible. · And

where the defect is not readily observable the buyer is not charged with actual knowledge thereof so as to deprive him of the benefit of the warranty.

**Same:** BREACH OF WARRANTY: EVIDENCE. On the question of whether an animal sold was a breeder as warranted at the time of sale, evidence of the proven capacity of the animal to breed after the purchase is competent.

**Same:** DAMAGES. On a breach of the warranty that an animal was a breeder, the purchaser may recover the expense in attempting to breed the same, incurred prior to knowledge of the fact that she was not a breeder.

**Appeal:** CHANGE OF POSITION. Where the appellant not only fails to raise the objection in the lower court that the record does not contain direct evidence on a certain question, but in his motion for a new trial recognizes the existence of the same, he is not entitled to a reversal because of absence of such evidence; especially where there are proven circumstances, supporting the contention.

**Costs:** APPORTIONMENT. The presumption is in favor of the courts ruling on the question of costs; and although the jury finds in favor of a defendant on one count and against him on others, a reversal will not be ordered for failure to apportion the costs, in the absence of a showing of the costs incurred on the one count.

*Appeal from Marshall District Court.*—HON. C. B. BRADSHAW, Judge.

FRIDAY, MAY 7, 1909.

REHEARING. DENIED THURSDAY, OCTOBER 28, 1909.

ACTION for damages for breach of warranty in the sale of cows. Verdict and judgment for the plaintiff. Defendants appeal.—*Affirmed.*

*Carney & Carney,* for appellants.

*Boardman & Lawrence* and *J. M. Parsons,* for appellee.

EVANS, C. J.—The defendants were breeders of pedigreed cattle. On April 24, 1901, they held a public sale at their farm in Marshall county, which had been duly advertised by printed catalogue. The plaintiff, who is also a breeder of pedigreed cattle residing in Sioux county, received one of the printed catalogues, and attended the sale, and became a purchaser thereat of three cows, namely, Cherry 5th, at $555, Etta Greenvale, with calf at side, at $520, and Barmton Leaf 2d, at $400. Defendants' printed catalogue contained the following announcement: "In making this offer, we guarantee every animal over two years old, breeders." This printed guaranty was publicly read by the auctioneer to the assembled bidders at the sale, and before the purchase of any stock by any bidder. The plaintiff brought his action as for a breach of this guaranty, as to each one of the three cows above named. He alleged that none of said cows were breeders at the time of his purchase thereof, and that none of them ever produced a calf after his purchase thereof. He averred generally that they were bought for breeding purposes, and that they would have been worth the price paid for them if they had been breeders; whereas in fact they were nonbreeders, and had no greater value than $50 or $55 each; such value being for beef purposes only. The answer of the defendants admitted the purchase and the guaranty, but denied that the cows in question were nonbreeders at the time of the sale, and averred affirmatively that the guaranty in question was made conditional by public announcement of M. E. Andrews at the time of the sale to the effect that, if any of the cows sold did not breed within a reasonable time, such cow should be returned to the farm where the sale was held, and the defendants should be allowed to breed such cow for a reasonable time thereafter. If such cow should, within a reasonable time, prove to be with calf, she was then to be returned to the purchaser; and, if she failed to be with

calf, the purchase money was to be refunded. The defendants averred that this condition was not complied with by the plaintiff. Defendants also averred that there was a certain custom and usage in vogue which was known to both vendor and vendee, whereby a guaranty of the breeding quality of a blooded cow was made conditional, substantially in accord with the alleged announcement of M. E. Andrews at the sale, and that such custom and usage became a part of the contract of purchase, and that the plaintiff was bound thereby to return said cow within a reasonable time to give the defendants an opportunity to test the same. Upon the trial it appeared that the cow Barmton Leaf had produced since the sale a dead calf, and as to such cow the finding of the jury was adverse to the plaintiff. The plaintiff has not appealed, and we shall have no occasion to give consideration to that part of plaintiff's claim. As to the cows Cherry 5th and Etta Greenvale, the jury allowed a recovery of $900, with interest from the date of sale. This amount was reduced by the court, upon motion of the defendants, to $880, with like interest. Under the testimony on behalf of the plaintiff neither of the two cows now under consideration ever became with calf after his purchase thereof.

I. Defendants' plea of custom and usage was as follows:

But these defendants aver that it is the custom and usage, and was at the time of the sale, that when full-blood animals, like short-horn cattle, are sold at public auction for breeding purposes, and a guaranty made that they are breeders at the time of the sale, the animals so sold, which are found not to be breeders, within a reasonable time after such sale, should be returned to the vendor immediately, and that the vendor shall have a reasonable time after their return to breed them, and in case vendor fails to get such animals in calf within a reasonable time, and they are not breeders, the vendor shall

1. SALES: variance of express warranty by proof of custom.

return the purchase price to the vendee and retain the animals; but, if the animals prove to be breeders by the test made by the vendor, when they are to be returned to, and taken by, the vendee. That such custom is general, within the State of Iowa, is well known to all breeders of short-horn cattle, and the vendors and vendees thereof at public sales of such stock, and was well known to both the plaintiff and defendant at the time of said sale. That said animals were sold and purchased with the knowledge of said custom by vendee and vendor, and the said contract of guaranty was modified and changed by the said custom entering into and constituting a part of it. These defendants further say that none of the cows sold by defendants to plaintiff as aforesaid were returned to the defendants, or offered to be returned to them, within a reasonable time, for the purpose of allowing them to test said animals as to whether they were breeders or not, and that plaintiff has wholly failed and neglected to carry out and comply with the conditions of said contract incumbent upon him to perform, and cannot recover for breach of said contract, caused by his own misconduct in failing to comply with the conditions thereof.

The defendants offered the evidence of certain witnesses in support of this plea of custom. The questions propounded were objected to upon many grounds, both of form and substance, and these objections were sustained. We will not dwell upon the question of the sufficiency of the form of the questions objected to, but will deal with the substance of the contention. We are of the opinion that defendants' plea of custom furnishes them no standing room as a defense. Plaintiff sues upon an express contract of guaranty. Its terms are ordinary and complete, and free from ambiguity. Evidence of custom may be received to explain the meaning of a contract otherwise ambiguous. It may be received also to ascertain the implications of a contract as to those matters upon which its expressed terms are silent. But customs are never paramount to the contract, as expressed by the parties. On

the contrary, they are subordinate to the contract, and can never be permitted to contradict it, nor to affect the rights of the parties as fixed by the plain terms of the contract. *Cash v. Hinkle,* 36 Iowa, 623; *Willmering v. McGaughey,* 30 Iowa, 205; *Phillips v. Starr,* 26 Iowa, 349; *Smyth v. Ward,* 46 Iowa, 339; *Stansbury v. Kephart,* 54 Iowa, 647; *Windland v. Deeds,* 44 Iowa, 98; *Randolph v. Halden,* 44 Iowa, 327; *Duncan v. Green,* 43 Iowa, 679; *Marks v. Cass County Mill Co.,* 43 Iowa, 146. The alleged contract sued on by the plaintiff is complete in its terms, and the legal rights of the parties thereunder are clear and unmistakable. The effect of the custom pleaded by the defendants would be to vary such contract in a very material sense. This cannot be done by proof of an alleged custom. We think, therefore, that the trial court correctly eliminated from the case defendants' plea of custom and usage.

II.   The ground covered by defendants' plea of custom was covered also by a plea of subsequent contract, as already stated, to the effect that a condition had been attached by public announcement of M. E. Andrews at the sale. In support of this plea the court permitted the defendants to introduce evidence. The court also instructed the jury that, if it found that the alleged condition was attached to the guaranty by public announcement, as claimed, then the plaintiff could not recover at all; it being undisputed that he did not comply with such condition. The defendants offered to prove by certain witnesses what would be a reasonable time for plaintiff to ascertain whether the cows in question were breeders or not. This proffered testimony was ruled out by the court as immaterial, and of this ruling the defendants complain. If there had been any claim on the part of the plaintiff that he had complied with the alleged condition within a reasonable time, a different question would be presented, but no such claim

*2. SAME: exclusion of evidence: harmless error.*

was made. There was no burden of proof upon defendants on the question of reasonable time. The court gave them the benefit of a peremptory instruction, directing a verdict in their favor in case the alleged condition was proved. Under such instruction they had no need to go into the question of reasonable time, and could not be prejudiced by its elimination. The jury necessarily found against them on the question whether such condition was announced, and this adverse finding against defendants carried down their whole affirmative defense.

Plaintiff did not sue as upon a rescission of the contract. On the contrary, he elected to keep the property and sue for damages for breach of warranty. This he had a right to do, and he was not bound to return the property as a condition precedent. *Storrs v. Emerson,* 72 Iowa, 390; *Jackson v. Mott,* 76 Iowa, 263; *Short v. Matteson,* 81 Iowa, 638. He was bound to recover, if at all, upon the case presented by his petition, of which "reasonable time" was not an element. This statement should be qualified to this extent: The plaintiff did claim damages for the care and keeping of the animals pending his trial thereof. The question of "reasonable time" was involved in that item of damages; but the court struck this item out of the case, and refused any allowance thereon. So that from any point of view the defendant has no grievance by reason of the ruling of the court on this question.

3. SAME: action for breach of warranty.

III. The defendants complain of the admission of certain opinion evidence on behalf of the plaintiff as to what constituted "a breeder." Evidence appears to have been introduced on this question upon both sides. As applied to the two cows now under consideration, we can see no materiality or occasion for the evidence. As bearing upon the cow Barmton Leaf, however, a somewhat different situation is presented. It appears from the evidence that this cow

4. SAME: evidence: harmless error.

dropped a dead calf, and the controversy among the witnesses appeared to be whether a cow should produce a living calf in order to be deemed by stockmen as a breeder. On this issue the jury found with the defendants, so that they have no occasion to complain, even though the subject were not a proper one for opinion evidence. There was no claim by any witness on either side that a cow would be deemed a breeder if she could produce no calf. As to the two cows now under consideration, therefore, the evidence received on behalf of plaintiff proved no more than did the evidence introduced by the defendants themselves.

IV. Complaint is made that the trial court permitted the plaintiff to show that the cows in question would have been worth all he paid for them "for breeding purposes" if they had been as warranted, but that for beef purposes they were worth a comparatively small sum. The claim is that the purpose for which the animals were bought is immaterial, and cannot be considered. The point is not well taken. It is undisputed that the chief element of value of these cattle, and of this class of cattle, consists in their suitability for breeding purposes. That was the special quality covered by the guaranty. There was no error at that point.

5. SAME: breach of warranty: evidence.

V. It appears from the evidence that the cow Etta Greenvale had at some time suffered a rupture of her parts, and was in the condition known to stockmen as "gilflerted," and that such condition renders breeding impossible. It is claimed by the defendants that this condition, if it existed at the time of the sale, was plainly observable, and should have been discovered by the plaintiff, and that this obvious defect was not covered by the warranty. This defective condition is one that is not common. No witness was produced who had ever seen more than one case of the kind. Plaintiff, though an

experienced stockman, had never before seen any such case, and did not discover this condition until nearly a year after the purchase. The defendants offered to prove, by expert opinion of one witness, whose experience was limited to one case, that the condition, if it existed at the time of the sale, was readily observable and apparent. The evidence was refused by the court upon objection by the plaintiff. Later the plaintiff offered the same kind of evidence by another witness, whose previous observation and experience was also limited to one case. The defendants objected to this evidence on the same ground that the plaintiff had objected to theirs. For some reason the defendants' objections were overruled, and the evidence was permitted on behalf of plaintiff. We are not able to harmonize this latter ruling of the court with the previous ruling.

The first ruling was clearly correct, and the second ought to have followed it. There was no occasion for any opinion as to whether the condition was readily observable. The condition itself and its location were described, and the jury needed no aid to determine whether it was readily observable. It is undisputed that the plaintiff did not observe it. It is too manifest for dispute that the condition was not so readily observable that plaintiff could be charged with actual knowledge thereof so as to deprive him of the benefit of the guaranty. *Storrs v. Emerson,* 72 Iowa, 390. Mere negligence on his part would not defeat his right to rely on the guaranty. The error of the court in receiving the testimony referred to could therefore work no prejudice.

6. SAME: knowledge of breach: expert evidence.

VI. The court instructed the jury that, although the question to be determined was whether the animals were breeders at the time of the sale, yet they had a right to consider prior and subsequent conditions in determining that fact, and that "the actual proved capacity of the ani-

mals to breed after purchase is proper to be considered by

you in determining whether or not said ani-

**7. SAME: breach of warranty: evidence.** mals at the time of sale were breeders or

not." The defendants complain of the provision above quoted. It is in accord with the previous holding of this court. *Wingate v. Johnson,* 126 Iowa, 156.

The court also in its instructions permitted the jury to allow the expense incurred in the attempted breeding of the cows, and defendants complain of this holding.

**8. SAME: damages.** This appears to be in accord with *Elwood v. McDill,* 105 Iowa, 441. The evidence

of such expense was confined to a time prior to the discovery by plaintiff of the alleged condition of the cows as nonbreeders.

VII. The trial court gave to the jury the usual instruction as to measure of damages, namely, the difference between the value of the cows as they actually were

and their value as it would have been if

**9. APPEAL: change of position.** as warranted. Defendants complain of this

instruction on the ground that the plaintiff offered no direct evidence of the actual value of Etta Greenvale as a nonbreeder, and that the jury, therefore, had no data by which to determine the measure of damages as to her. The state of the record in that respect is as contended by appellants, but they are not in a position to complain of it. Not only did the defendants fail to raise the question in the lower court, but they took the ground there that there was such evidence in the record. Not even in the motion for a new trial was it brought to the attention of the lower court. On the contrary the eighth ground of the motion for a new trial was as follows: "(8) The verdict is erroneous and excessive, for the reason that the evidence as to the two animals Cherry 5th and Etta Greenvale do not support said verdict; for, after deducting the amounts that said

animals were worth at the time of sale as shown by the uncontradicted testimony of the plaintiff and adding the items of expense for breeding as shown by his testimony, the amount of said verdict should not exceed $860." The court conditionally sustained the motion for a new trial on this ground, and required the plaintiff to remit from the verdict as a condition to a judgment thereon. It is manifest from this ground of the motion that the case was tried below on the theory, on both sides, that there was such evidence in the record.

It may be noted also that, notwithstanding the absence from the record here of direct evidence on the question, there are facts appearing in evidence from which, as circumstances, the jury could approximate the beef value of the cow in question. We note, also, that appellant's first assignment of error in their printed brief is as follows: "(1) Plaintiff was permitted improperly to state what Etta Greenvale was worth on the day of sale." In view, therefore, of the position taken by appellants in their motion for a new trial before the lower court, we would not be justified in finding that there was no evidence on the question of such value, nor in reversing the case upon such ground.

VIII. It is contended also that the verdict as reduced by the lower court was still excessive. It does not appear from the record upon what theory the court proceeded in reducing the verdict from $900 to $880. If credit was allowed the defendants for the sale of the calf at $120, then plaintiff could not have recovered more than $870 or $875. On the other hand, the undisputed testimony was that the value of the calf at the side of Etta Greenvale when she was purchased was only $75. If the figures were made upon that basis, the verdict of $900 was not too large. In any event, the difference is so small we would not be justified in interfering with the judgment on account thereof.

IX.   The plaintiff brought his action in three separate counts, setting up a separate cause of action for breach of warranty as to each, of the three cows.   As to one count, the verdict was in favor of the defendants.   Plaintiff moved for an apportionment of costs, which the court refused, and appellants. complain of this ruling.   Clearly the defendants were entitled to the costs incurred by them in the defense of such count, if any were made.   If they incurred no costs thereby, they have, of course, no grievance.   No showing is made in this record as to what, if any, costs were incurred in relation to such count.   The presumption is in favor of the ruling of the trial court.

<span style="margin-left:2em">10. Costs: apportionment.</span>

A number of other questions are argued by counsel which we cannot now discuss in detail.   What we have said in the foregoing is decisive of the principal questions in the case.

The case has been argued with great industry and ability, and we have given careful consideration of every point discussed.   While the record is not entirely free from error, we are constrained to hold that it contains nothing prejudicial, and that the judgment below must be *affirmed*.