·G. B. HEALEY and W. B. CARTER v. C. R. TYLER and
FRED D. MORGAN, Appellants.

**Landlord and tenant:** REPAIRS: DUTY OF LESSOR: COVENANTS.  A
lessor is not under obligation to repair the property unless such
obligation is imposed by the terms of the lease.
In this case the lease contained a provision that the lessees should
keep the premises in as good repair as they were at the time of mak-
ing the lease, or as subsequently repaired by the lessors, except
in case of superior force, inevitable necessity, fire or damage from
any other cause than the carelessness of the lessees, persons of
their family or in their employ, and it is held that the lessors
were under no obligation to repair damages caused by an excep-
tional flood.

**Same:** EVIDENCE: CUSTOM AND USAGE.  Where the covenants of a
lease are unambiguous as to the duty to make repairs and no such
duty is devolved upon the lessor by the terms of the lease, custom
and usage can not be shown to impose such obligation upon him.

**Same:** VARIANCE: PAROL EVIDENCE.  Where the language of an instru-
ment is plain and unambiguous a party thereto can not allege
and prove that he understood it in a different sense from that
in which it was understood by the other party.

*Appeal from Woodbury District Court.*—HON. WM.
HUTCHINSON, Judge.

TUESDAY, FEBRUARY 7, 1911.

IN an action to recover rent for business premises in
Sioux City occupied by defendants, under a written lease,
the defendants interposed a counterclaim for expenses of
freeing the basement of the building on the premises from
water, mud, and debris deposited as the result of an ex-
ceptional flood caused by a freshet in a stream flowing
through the city in the neighborhood of the premises, and

an additional amount for repairs made necessary by such flood. Demurrers to the counterclaim and to an amended counterclaim were sustained, and, on defendants' election to stand on their pleadings, judgment was rendered for plaintiffs, from which defendants appeal. *Affirmed.*

*H. C. Gardiner,* for appellants.

*Jepson & Jepson,* for appellees.

McCLAIN, J.—The portion of the lease relied upon by the defendants as obligating the plaintiffs to free the basement of the building of water, mud, and debris resulting from a freshet and to make the repairs rendered necessary by such freshet reads as follows: "And the parties of the second part (lessees) covenant with the parties of the first part that they will keep the buildings, glass, gates, fences, etc., in as good repair as the same now are, or may at any time be placed in by the lessor, as the same shall require it, damage by superior force, inevitable necessity, or fire, or from any other cause than from the carelessness of the lessees or persons of their family or in their employ excepted . . . and that at the expiration of the term of this lease, or forfeiture thereof, they will yield up the premises to the parties of the first part without further notice in as good condition as when the same was entered upon by the parties of the second part, loss by fire, or inevitable accident and ordinary wear excepted."

I.    The interpretation to be given to the language of the lease in regard to repairs (and for the disposition of the case it may be conceded that freeing the basement from water, mud, and debris left there by a freshet would come under the head of repairs) plainly is that the lessees covenant to keep the building in as good a state of repair as that existing at the time of the lease or subsequently cre-

1. LANDLORD AND TENANT: repairs: duty of lessor: covenants.

ated by the acts of the lessors in the event that the build-
ing shall require repair, with the exception that no such ob-
ligation on the part of the lessees shall arise with reference
to damage by superior force, inevitable necessity, or fire, or
from any other cause than the carelessness of the lessees or
persons of their family or persons in their employ; that is
to say, the lessors may repair if the condition of the build-
ing shall be such as to require repairs to be made, no mat-
ter what the occasion for repair might be, and, if the les-
sors shall so repair, that the building must be subsequently
kept in that state of repair in which it is thus placed by
the lessors, with the exception specified.   On the other
hand, the lessees are relieved from obligation to make re-
pairs other than those rendered necessary by their own
carelessness or the carelessness of the members of their
family or their employees.   This construction is enforced
by the last clause quoted, which requires the lessees at the
termination of the lease or on forfeiture thereof to yield
up the premises in as good condition as when the same were
entered upon by said lessees with the exception of loss by
fire or inevitable accident and ordinary wear.   It is pos-
sible that as to some forms of damage there might be diffi-
culty in the interpretation of the language used, but as to
the particular damage to which this action relates, not al-
leged to have resulted from any carelessness of the lessees
or persons of their families or person in their employ and
due to inevitable accident, it is plain that there was no
obligation on the lessors to repair the damage or restore
the premises to their former condition.   It is elementary
that the lessor is under no obligation to make repairs unless
such obligation is imposed by the terms of the lease.   Un-
derhill, Landlord and Tenant, 511; *Piper v. Fletcher,* 115
Iowa, 263.   Under this rule it is plain that there is noth-
ing in the language used from which a covenant on the
part of the landlords to make repair can be fairly implied.
If by inevitable accident the building ceased to be capable

of occupancy, the lessees remained liable for rent, and could repair or not in their discretion.

II. It was further alleged, however, by way of counterclaim that the lease was in printed form in common and general use in Sioux City, and that by general custom and usage among the parties to similar agreements in said community it was the duty of the lessees to make the ordinary repairs rendered necessary by the use and occupancy of the premises, and that extraordinary repairs not connected with or caused by such occupancy. and made necessary by the wear and tear of the building and the action of the elements or inevitable accident were to be made by the lessors. As to this allegation of custom and usage, it is sufficient to say that, as to the matter here involved, the language of the lease is plain and unambiguous. If it had been the intention that the lessors should be obligated to make repairs, such intention would have been plainly expressed in the language of the instrument having relation to such subject matter. Failure to embody any such stipulation was a clear expression of the intention that no such obligation should rest upon the lessors. The language is plain and unambiguous, and leaves no room for proof of custom or usage adding to the obligations of the lessors. *Phillips v. Starr*, 26 Iowa, 349; *Willmering v. McGaughey*, 30 Iowa, 205; *Cash v. Hinkle*, 36 Iowa, 623; *Marks v. Cass County Mill, etc., Co.*, 43 Iowa, 146; *Randolph v. Halden*, 44 Iowa, 327; *Ryan v. Dubuque*, 112 Iowa, 284.

2. SAME: evidence: custom and usage.

Nothing is pointed out as to any peculiar situation of the parties with reference to the premises nor any conduct of either in apparent construction of the terms of the instrument which would warrant any other interpretation than that to be placed on the plain language used, and, where the language is unambiguous, it is not open to a party to the instrument to allege and prove that he understood it in a different

3. SAME: variance: parol evidence.

sense from that in which it was understood by the other party. *Inman Mfg. Co. v. American Cereal Co.*, 133 Iowa, 71.

The judgment is *affirmed*.