CHARLES E. RISSER, Appellant, v. PERRY COX, Appellee.

SALES: Warranty—Non-Discoverable Defects. Evidence reviewed,
and held to show that defects in a piano were not so readily
discoverable as to deprive the purchaser of the benefit of a
warranty.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.

NOVEMBER 22, 1919.

THIS is a suit in equity, to recover judgment upon and
to foreclose a chattel mortgage note given for the purchase
price of and upon a piano. The defendant filed a cross-bill,
alleging false representations made by the plaintiff to in-
duce the sale, and relied upon by the defendant; also alleg-
ing the breach of an express warranty made by the plain-
tiff, and the breach of an implied warranty; and praying
that plaintiff's petition be dismissed, with judgment against
the plaintiff for costs, and the cancellation and surrender
of the chattel mortgage note and of a check given by the
defendant to apply thereon. The court found that the eq-
uities were with the defendant, and dismissed the plain-
tiff's petition, and ordered the note and check canceled.
Defendant had stopped payment of the check, which was
given in part payment on the purchase price. The plain-
tiff appeals.—*Affirmed.*

*Nourse & Nourse,* for appellant.

*Fred F. Keithley,* for appellee.

PRESTON, J.—The issues in the case are:

1. Whether the plaintiff represented to the defendant
that the piano was a new, high-grade piano, perfect in every
particular, as an inducement to the sale, and whether said

representations were relied upon by the defendant, and whether they were false.

2. Whether the plaintiff warranted said piano by an express warranty that it was a new, high-grade piano, perfect in every particular, and whether said warranty was breached.

3. Whether there was an implied warranty that the piano was a new, high-grade piano, perfect in every particular, and whether said warranty was breached.

The question presented depends on the testimony, and is largely a question of fact. It may be that some of the statements made by plaintiff were trade talk. Plaintiff has been engaged in the piano business for a number of years. Defendant is a carpenter, and neither he nor his wife was familiar with pianos, neither having owned or used one, nor had one in the house, nor played one. They had been married about 18 years. When defendants went to look at the piano first, they took a musician with them, who played the piano in question for them. Defendant and his wife also looked at pianos handled by other dealers, at about the same time, but returned to plaintiff, who urged defendant, or his wife, to permit him to send the piano to defendant's home. The defects complained of are that the keys were not pure white, but were "kind of yellowish," as the witnesses put it, and some of them had cracks in the ivory. Plaintiff testifies that, the longer the keys are exposed to the air, the more discoloration there is; that they get darker; that there were checks or hair lines under the varnish which were not readily observable, and which showed more plainly at some times than at others. They show more plainly in cold weather. There is testimony that, to notice them, the light must be shining right, and at a particular angle; that they grow with age, and will get larger, and come clear through to the finish; that they may not be seen by standing straight in front and looking

at them. Evidence for the defendant is to the effect that these checks or lines existed at the time of the sale, but that they became more noticeable afterwards. It is shown that these cannot be removed, without taking the varnish off down to the wood. The evidence shows that this is a hard, dirty, expensive job, worse than finishing the first time, and costs more. Defendant also claims that the instrument was not a new one. The instrument was taken to defendant's home, where it remained for a time before the sale was made. Defendant claims that the defects were not discovered until after the note and mortgage had been executed, but at the same time, and that there was some talk about them with the plaintiff. Plaintiff agreed to send a man out, the next day, to go over the piano, but plaintiff testifies that he did not intend that the finisher should remove the varnish, but only polish the piano. Plaintiff did not send the man the next day. Plaintiff claims to have sent a man several weeks later. After the discovery of the defects, there were some negotiations in regard to getting defendant a dull-finish piano, in place of the one in controversy, and such a one was ordered; but it was several months before it arrived, and when it came, defendant and his wife were not satisfied with the tone of it. Thereafter, defendant served notice on the plaintiff to remove the piano, and, the next day thereafter, this suit was brought. It does not appear that, in the sale of the piano, plaintiff used the word new—that is, that the piano was a new piano; but the testimony for defendant is that he told plaintiff he wanted to buy a new piano, and plaintiff then proceeded to show pianos. Plaintiff himself testifies:

"Q. You knew, Mr. Risser, when Mr. and Mrs. Cox came in, that they expected you to sell them a piano, if you sold a piano, that was new and in perfect condition, didn't you? A. Yes, sir. Q. And you also told them, at all

times, that the piano was guaranteed, didn't you? A. Yes, sir."

Testimony for defendant is that plaintiff stated that it was a guaranteed piano, and all right, and that it was guaranteed to be first class. Other statements made by plaintiff, as testified to by defendant's witnesses, are that it was a fine piano, etc. It is not claimed that all these statements were made at the first conversation, but they were made at different times in the store, and at defendant's home, but before the sale was completed. Plaintiff does not deny making these statements, some of which are, of course, trade talk. Plaintiff describes the light conditions at the store, and at defendant's home, and the size of the room, and claims in argument that defendant had an opportunity to see, and that the doctrine of *caveat emptor* applies. Some of these matters are disputed by defendant in rebuttal. Plaintiff testifies that he did not see any cracks in the keys, when he was at defendant's home; that defendant's wife called his attention to a mark on one key; that there was no separation of the parts, but a little black mark, that might, in time, become a crack; that it was almost invisible; that he agreed to replace the key, but was not asked to; that he did not know of any discoloration on the keys; that it was a new piano, and a high-grade piano. He says that there were two occasions when his attention was called to the matter of checks or hair lines in the finish, one of which was at the time the contract was closed, and that he explained to defendant and his wife that those were invisible hair lines, checks which sometimes occurred in a piano right in the factory; that, later, he went to the house and examined the piano, but at that time could not find any hair lines or checks; that atmospheric conditions vary, and affect this condition. It was agreed that the trial judge should make a personal examination of the piano. This was done. The trial court not

only saw and heard the witnesses, but, in addition thereto, saw the object the witnesses were attempting to describe. This was an advantage we do not have, and, as we have so often said, we give some weight to the finding of the trial court.

We have not attempted to go into the testimony fully, but, after reading the entire record, we reach the conclusion that the trial court properly held that, under the weight of the testimony, and under all the circumstances, the equities were with the defendant, and that there was a warranty, and that the piano in question was not as warranted. It is elementary that no particular form of words is necessary to constitute an express warranty. We think, under the evidence, that the defects were not readily observable, and that defendant was not charged with the actual knowledge thereof, so as to deprive him of the benefit of the warranty. *Steele v. Andrews,* 144 Iowa 360, 367; *Meickley v. Parsons,* 66 Iowa 63. Under the evidence before set out, which is undisputed, defendant supposed he was buying a new piano, and all right. Plaintiff knew this, and knew that, if he sold a piano to defendant, it was to be new, and in perfect condition. We think it was the intention to warrant the piano in question to be such. The judgment is—*Affirmed.*

Ladd, C. J., Evans and Salinger, JJ., concur.